DOLLY, INC., Plaintiff–Appellee,

v.

SPALDING & EVENFLO COMPANIES, INC., Defendant–Appellant.

No. 93–1233.

United States Court of Appeals, Federal Circuit.

Decided Feb. 8, 1994.

---

David A. Shough, Faruki, Gilliam & Ireland, Dayton, OH, argued for plaintiff-appellee. With him on the brief were Charles J. Faruki and Donald E. Burton. Also on the brief was Richard A. Killworth, Killworth, Gottman, Hagan & Schaeff, Dayton, OH.

Christopher B. Fagan, Fay, Sharpe, Beall, Fagan, Minnich & McKee, Cleveland, OH, argued for defendant-appellant. With him on the brief was Richard M. Klein.

Before ARCHER, PLAGER, and RADER, Circuit Judges.

RADER, Circuit Judge.

Dolly, Inc. (Dolly) sued Spalding & Evenflo Companies, Inc. (Evenflo) in the United States District Court for the Southern District of Ohio (Western Division) for unfair competition and infringement of U.S. Patent No. 4,854,638 (the '638 patent). On an earlier appeal in this same case, *Dolly, Inc. v. Spalding & Evenflo Cos.*, 954 F.2d 734, 23 USPQ2d 1555 (Fed.Cir.1992), this court vacated the district court's preliminary injunction because the trial court had improperly construed the patent claims. On remand, the district court determined that Evenflo infringed the '638 patent under the doctrine of equivalents. Due to improper application of the doctrine of equivalents, this court reverses.

## BACKGROUND

The '638 patent discloses a portable, adjustable child's chair that also serves as a booster seat or a highchair. The '638 patent carries the title "Portable Adjustable Child's Chair." The claimed chair has a series of channels into which the seat panels slide, thereby adjusting the seat height to accommodate a growing child. The chair also has a detachable tray, means for retaining the child in the seat, and means for securing the chair to a standard kitchen chair for use as a highchair.

Claim 19, the only claim at issue, is dependent upon claims 16 and 17. Claims 16, 17, and 19 state:

16. A portable adjustable child's chair, comprising:

(a) a contoured seat panel;

(b) a contoured back panel;

(c) two side panels having on their inner surfaces facing each other a plurality of generally horizontal grooves or channels to slidably receive said seat panel whereby said seat panel may be raised or lowered; and

(d) a stable rigid frame which is formed in part from said side panels and which along with said seat panel and said back panel provides a body supporting feature, said stable rigid frame being self-supporting and free-standing, whereby said child's chair is readily portable and easily stored.

17. The portable adjustable child's chair of claim 16 further comprising:

a serving tray; and

means for removably attaching said tray to said child's chair.

. . . .

19. The portable adjustable child's chair of claim 17 further comprising means for retaining the occupant in said child's chair and means for securely attaching said child's chair to an existing chair or other support.

Evenflo produces the "Snack & Play" chair, a portable adjustable child's chair which also converts into a booster seat or highchair. The Snack & Play chair consists of four interlocking panels, a tray, and two

sets of straps. The Snack & Play chair completely disassembles for easy portability and storage. Indeed Evenflo sells its chair disassembled. The purchaser assembles the components to form a chair. In disassembled form, the Snack & Play chair consists of four panels—a back panel, a seat panel, and two side panels. During assembly, the back panel tabs slide into receiving grooves on the side panels, the seat slides into one of three slots on the side panels and engages a receiving slot on the back panel to make a stable chair. The seat height adjusts because the assembler can choose from among three slots on the side panels when attaching the seat panel. The Snack & Play has no additional frame or components supporting the side, back, and seat panels.

In granting Dolly's motion for a preliminary injunction on January 8, 1991, the district court held that the Snack & Play infringes claim 19 both literally and under the doctrine of equivalents. The trial court read paragraph (d) of claim 16 to mean that the back and seat panels can be part of the stable rigid frame. *See Dolly, Inc. v. Spalding & Evenflo Cos.*, 18 USPQ2d 1737, 1748, 1991 WL 117061 (S.D.Ohio 1991). On appeal, this court vacated the injunction and remanded. This court stated: "[T]he claim language requires that the stable rigid frame must be formed independent of the seat and back panels." *Dolly*, 954 F.2d at 734, 23 USPQ2d at 1556.

On remand, Dolly withdrew its claim for literal infringement. The Snack & Play lacks a stable rigid frame separate from the seat and back panels as required by claim 16. Dolly continued to assert infringement under the doctrine of equivalents. Both Evenflo and Dolly filed motions for summary judgment. Evenflo sought a judgment of noninfringement; Dolly sought reinstatement of the injunction.

The district court granted Dolly's motion for summary judgment, permanently enjoining Evenflo from infringing the '638 patent. The district court held that the Snack & Play infringes Claim 19 of the '638 patent under the doctrine of equivalents. The trial court reasoned that the Snack & Play's assembly of a frame from the back, seat, and side panels is the equivalent of the stable rigid frame limitation in claim 16. Evenflo appeals the district court's determination that the Snack & Play infringes under the doctrine of equivalents.

## DISCUSSION

The determination of infringement is a two-step process: First, the court interprets the claim to determine its scope and meaning; second, the court determines whether the accused device is within the scope of the properly construed claim. *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796, 17 USPQ2d 1097, 1099 (Fed. Cir.1990). To show infringement, the plaintiff must establish that the accused device includes every limitation of the claim or an equivalent of each limitation. *Id.*

An accused device may infringe a claim under the doctrine of equivalents if it performs substantially the same overall function or work, in substantially the same way, to produce substantially the same overall result as the claimed invention. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950); *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934, 4 USPQ2d 1737, 1739 (Fed.Cir.1987) (in banc), *cert. denied* 485 U.S. 961, 485 U.S. 1009 (1988). "To be a[n] . . . 'equivalent,' the element substituted in the accused device for the element set forth in the claim must not be such as would substantially change the way in which the function of the claimed invention is performed." *Perkin–Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1533, 3 USPQ2d 1321, 1325 (Fed.Cir.1987).

On remand, the district court determined that the Snack & Play contained an equivalent to the missing separate stable rigid frame:

> The stable rigid frame which exists when the Snack and Play side panels, back panel, and seat panel are assembled performs substantially the same function as the stable rigid frame in the claimed chair because the side panels are interconnected through the back panel and through the seat panel. The seat panel and back panel

of the Snack and Play chair, like the tubular supports and tie rods in the '638 Patent's preferred embodiment connect the side panels so that they are upright, parallel to each other, and rigidly and uniformly spaced apart from each other, forming a stable rigid frame which is self-supporting and free standing and which also provides a body supporting feature.

*Dolly, Inc. v. Spalding & Evenflo Cos.*, No. C–3–90–226, slip op. at 5 (S.D.Ohio Feb. 9, 1993). The court thus held that the Snack & Play's stable rigid frame, assembled from the various panels, is the substantial equivalent of the separate stable rigid frame in claim 16. In addition, the district court found that the Snack & Play's stable rigid frame provides the body supporting feature without the addition of other components.

The district court erred by disregarding a specific limitation in claim 16. Although the Snack & Play chair, assembled from seat, back, and side panels, is itself a stable rigid frame, the '638 claim requires a stable rigid frame apart from the back and seat panels. The Snack & Play chair has no separate stable rigid frame.

■ The doctrine of equivalents cannot extend or enlarge the scope of the claims. *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 684, 14 USPQ2d 1942, 1948 (Fed.Cir.), *cert. denied,* 498 U.S. 992, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990). "The claims—i.e. the scope of patent protection *as defined by* the claims—remain the same and application of the doctrine *expands the right to exclude* to 'equivalents' of what is claimed." *Id.* The doctrine of equivalents is not a license to ignore claim limitations. *See Pennwalt Corp.*, 833 F.2d at 935.

■ Claim 16's language requiring a stable rigid frame independent of seat and back panels is not a requirement solely for literal infringement. This limitation applies under the doctrine of equivalents as well. "Under the doctrine of equivalents, the accused device and the claimed invention cannot work in 'substantially the same way' if a limitation (including its equivalent) is missing." *Valmont Indus. v. Reinke Mfg.*, 983 F.2d 1039, 1043 n. 2, 25 USPQ2d 1451, 1455 n. 2 (Fed.

Cir.1993). The Snack & Play chair lacks a stable rigid frame separate from the panels. The Snack & Play also lacks a structure to which additional components are added to form the body supporting feature. Rather, the Snack & Play chair achieves its function without a stable rigid frame independent of the various panels. In the absence of the stable rigid frame limitation or its equivalent, the Snack & Play chair does not infringe.

■ The doctrine of equivalents does not require a one-to-one correspondence between components of the accused device and the claimed invention. *Intel Corp. v. International Trade Comm'n,* 946 F.2d 821, 832, 20 USPQ2d 1161, 1171 (Fed.Cir.1991); *see also Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 882, 20 USPQ2d 1045, 1054 (Fed.Cir.1991). An accused device may infringe under the doctrine of equivalents even though a combination of its components performs a function performed by a single element in the patented invention. *Intel Corp.*, 946 F.2d at 832. The accused device must nevertheless contain *every* limitation or its equivalent. *Id.*

■ Contrary to Dolly's assertions, *Intel Corp.* and *Vaupel Textilmaschinen* do not apply here. In those cases, more than a single element in the accused device performed the function of a single limitation in the claimed invention. Every limitation or its equivalent, however, was present in the accused device. Equivalency thus can exist when two components of the accused device perform a single function of the patented invention. In this case, however, a vital limitation of the claim is absent from the accused device.

■ Equivalency can also exist when separate claim limitations are combined into a single component of the accused device. *See Sun Studs, Inc. v. ATA Equip. Leasing Inc.*, 872 F.2d 978, 10 USPQ2d 1338 (Fed.Cir. 1989), *overruled on other grounds, A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1038–39, 22 USPQ2d 1321, 1333 (Fed.Cir.1992). In the instant case, one element of the accused device fulfills two functions of the claimed chair—the Snack & Play's panels serve as both the stable rigid

frame and the body supporting feature. Contrary to Dolly's contention, however, *Sun Studs* does not apply here. In *Sun Studs*, the patent claimed log processing equipment, comprising, *inter alia*, "aligning means for receiving and holding a log at a reference location," and "charger means for releasably gripping said log at said reference location and transporting the log past said scanning means." *Sun Studs*, 872 F.2d at 988. The district court held that the accused device, lacking a separate aligning means, did not infringe either literally or under the doctrine of equivalents. On appeal, this court reversed:

> It was legal error to hold that the aligning and charging steps must be performed by separate elements in the apparatus. One-to-one correspondence of components is not required, and elements or steps may be combined without *ipso facto* loss of equivalency. Each case must be decided in light of the nature and extent of the differences between the accused device and the claimed invention, on the equitable principles of the doctrine of equivalents.

*Id.* at 989.

 *Sun Studs* does not apply here because the claim in *Sun Studs* merely recited aligning and charging means without any additional limitation regarding the relationship of the two means to one another. In contrast, claim 16 specifically requires a stable rigid frame formed of components other than the seat and back panels. Such a stable rigid frame does not exist in the accused device. This court cannot "convert a multi-limitation claim to one of [fewer] limitations to support a finding of equivalency." *Perkin–Elmer Corp.*, 822 F.2d at 1532. The Snack & Play stable rigid frame assembled from the panels is not the equivalent of the claimed stable rigid frame which specifically excludes the seat and back panels.

Finally, *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 9 USPQ2d 1962 (Fed.Cir.1989), does not support an application of the doctrine of equivalents to find infringement in this case. In *Corning Glass*, the inventions related to optical fibers which transmit light for optical communications. The optical fiber, according to the claims, features a core with a positive dopant in excess of that in the cladding layer around the core. Thus, the core's index of refraction is greater than that of the cladding layer. This refraction differential channels the light signals through the core. The accused fibers contained no dopant in the core. These fibers, instead, contained a negative dopant in the cladding layer. The refractive index of the core remained different from that of the cladding layer to channel the light signals. This court upheld the district court's determination that the addition of a negative dopant to the cladding layer was the equivalent of the addition of a positive dopant to the core.

The *Corning Glass* court rejected the accused infringer's argument that the accused fibers could not infringe under the doctrine of equivalents because they lacked a claimed "element," the core dopant. This court noted the confusion about the term "element":

> "Element" may be used to mean a single limitation, but it has also been used to mean a series of limitations which, taken together, make up a component of the claimed invention. In the [*Pennwalt*] All Elements rule, "element" is used in the sense of a *limitation* of a claim.... An equivalent must be found for every limitation of the claim somewhere in an accused device, but not necessarily in a corresponding component, although that is generally the case.

*Corning Glass*, 868 F.2d at 1259. This language, however, did not alter the *Pennwalt* rule to create a more expansive test for infringement under the doctrine of equivalents. This language in *Corning Glass* did not substitute a broader limitation-by-limitation comparison for the doctrine of equivalents than the element-by-element comparison in *Pennwalt*. Rather, the *Corning Glass* court merely clarified the meaning of the term "element" in the context of the *Pennwalt* rule. *Corning Glass* reaffirmed that the rule requires an equivalent for every limitation of the claim, even though the equivalent may not be present in the corresponding component of the accused device. *Corning Glass*, 868 F.2d at 1259.

In *Corning Glass,* this court upheld the finding of infringement under the doctrine of equivalents:

> The use of ... a [negative] dopant in the cladding thus performs substantially the same function in substantially the same way as the use of a [positive] dopant in the core to produce the same result of creating the refractive index differential between the core and cladding of the fiber which is necessary for the fiber to function as an optical waveguide.

*Id.* at 1260 (alterations in original) (quoting *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.,* 671 F.Supp. 1369, 1387, 5 USPQ2d 1545, 1559 (S.D.N.Y.1987)). The accused device achieved the same refractive index differential by the addition of dopant, as required by the claim. The accused device only added a negative dopant to a different component. This court noted that this insubstantial change merely substituted a known alternative way to achieve the same result and perform the same function of achieving a refractive index differential. *Id.*

In the case at bar, the difference between the accused chair and the claimed invention is more fundamental. The Snack & Play chair did not merely substitute a known alternative to a stable rigid frame independent of seat and back panels to achieve the same body supporting function as the claimed invention. The difference here was not "insubstantial" at all. *See Charles Greiner & Co. v. Mari–Med Mfg.,* 962 F.2d 1031, 1036, 22 USPQ2d 1526, 1529 (Fed.Cir.1992). To perform its body supporting function, the claimed invention adds panels to a separate stable rigid frame. The Snack & Play has no stable rigid frame or equivalent structure to support additional panels. The Snack & Play disassembles completely into its flat panel components.

An "equivalent" of a claim limitation cannot substantially alter the manner of performing the claimed function. *Pennwalt,* 833 F.2d at 935. Where an accused device performs substantially the same function to achieve substantially the same result but in a substantially different manner, there is no infringement under the doctrine of equivalents. *Perkin–Elmer Corp.,* 822 F.2d at 1531 n. 6. In *Corning Glass,* the accused device retained both a core and cladding layer and the relationship of their respective refractive indices. In contrast, the Snack & Play chair lacks both a separate stable rigid frame and the claimed relationship between that frame and the seat and back panels to perform the body supporting function. *See Perkin–Elmer Corp.,* 822 F.2d at 1532.

In short, the concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims. A stable rigid frame assembled from the seat and back panels is not the equivalent of a separate stable rigid frame which the claim language specifically limits to structures exclusive of seat and back panels. The district court erred by failing to give effect to this claim limitation in applying the doctrine of equivalents to the Snack & Play chair.

Moreover, Evenflo appropriately designed around the claimed invention. The propriety of Evenflo's conduct lies in its creation of a chair substantially outside the metes and bounds of the invention as expressed in the claims and relied upon by the public. *See Charles Greiner,* 962 F.2d at 1036. Evenflo's Snack & Play chair did not incorporate mere "colorable" changes to avoid literal infringement. *See Graver Tank,* 339 U.S. at 612, 70 S.Ct. at 858. Rather, Evenflo created a different product to compete in the marketplace.

### COSTS

Each party shall bear its own costs.

REVERSED.