**SENIOR TECHNOLOGIES, INC.,**
**Plaintiff–Appellant,**

v.

**R.F. TECHNOLOGIES, INC.,**
**Defendant–Cross**
**Appellant.**

Nos. 00–1089, 00–1090.

United States Court of Appeals,
Federal Circuit.

Sept. 17, 2003.

Rehearing Denied Oct. 21, 2003.

Before CLEVENGER, Circuit Judge, SMITH, Senior Circuit Judge,* and BRYSON, Circuit Judge.

* Senior Judge Smith heard oral argument in this case but because of illness was unable to participate in the disposition. This case was initially decided by the remaining judges in accordance with Fed. Cir. R. 47.11. Senior Judge Smith died on March 22, 2001. We

CLEVENGER, Circuit Judge.

Senior Technologies, Inc. ("Senior Tech") appealed a judgment in favor of one of its competitors, R.F. Technologies, Inc. ("R.F.Tech"), upon the conclusion of a bench trial by the United States District Court for the District of Nebraska. On March 12, 2001, this court issued a ruling that affirmed the district court's conclusions of noninfringement, noninvalidity, and no inequitable conduct, and its denial of R.F. Tech's motion for attorneys' fees. *Senior Techs., Inc. v. R.F. Techs., Inc.*, No. 00–1089, –1090, 2001 U.S.App. LEXIS 4179 (Fed.Cir. Mar. 12, 2001) (*"Senior Tech III"*). Senior Tech petitioned the Supreme Court for review, and on June 3, 2002, the Court granted certiorari, vacated our decision, and remanded the case to this court for reconsideration in light of *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002) (*"Festo VIII"*). *Senior Techs., Inc. v. R.F. Techs., Inc.*, 535 U.S. 1108, 122 S.Ct. 2323, 153 L.Ed.2d 151 (2002). Based on the Supreme Court's instruction, we have reconsidered this case and, once again, *affirm* the district court's judgment.

I

Because we have previously discussed the background of this patent dispute in detail, *Senior Tech III*, 2001 U.S.App. LEXIS 4179, at *2–5, we need not repeat it here. We provide only the relevant facts salient to the instant disposition.

As we explained in our previous opinion, Senior Tech has accused R.F. Tech of infringing claims 1 and 6 of U.S. Patent No. 4,682,155 ("the '155 patent"), which is directed to a monitoring system used in nursing homes and other care facilities to monitor patients or residents who have a

tendency to wander. *Id.* at *2. Claim 1 calls for a "sensing module *including a receiving circuit and associated sensing means* located adjacent to the door opening to be monitored," while claim 6 requires "a receiving device for mounting adjacent to the doorway including *a housing and a receiving circuit therein." Id.* at *2–4 (emphases in original).

According to the patentee, four models of R.F. Tech's Code Alert products infringed the two asserted claims of the '155 patent: the CA9000, CA9100, CA9120, and CA600 models. The CA9000 model, first introduced in 1992, consisted of (1) an antenna mounted near a doorway, and (2) a "control unit," containing both the microprocessor and the preceding circuitry, located ideally at a distance of 10 feet from the door opening. *Id.* at *5. The later-introduced CA9100, CA9120, and CA600 models removed the preceding circuitry originally located in the control unit and placed that circuitry in the antenna mounted near the door, while leaving the microprocessor in the control unit. *Id.*

In *Senior Tech III*, we held that "the district court erred by not including the microprocessor in its comparison of the accused device with the construed 'receiving circuit.'" *Id.* at *11–12. The infringement analysis should have instead compared the "receiving circuit" claim term with the preceding circuitry and the microprocessor, together as a unit. *Id.; see also id.* at *17 ("As discussed above, both the microprocessor and the preceding circuitry corresponds [sic] to the limitation of 'receiving circuit' in the '155 patent."). However, we deemed the error harmless and affirmed the judgment of noninfringement on alternative grounds.

We first determined that the CA9100, CA9120, and CA600 models did not in-

continue to decide this case pursuant to Rule 47.11.

fringe the asserted claims because those devices did not satisfy the claims' "single housing" limitation either literally or by equivalents. *Id.* at \*12–18. As a matter of claim construction, claim 1's "language, specification, and prosecution history all indicate that the receiving circuit must be contained within the housing of the sensing module." *Id.* at \*13–14. For similar reasons, we determined "that claim 6 is limited to a device in which a receiving circuit is located within a housing." *Id.* at \*15. Based on these claim interpretations, we concluded that the accused CA9100, CA9120, and CA600 models did not literally infringe the asserted claims, because R.F. Tech had separated the preceding circuitry from the microprocessor and placed the two components of the "receiving circuit" in two different housings. *Id.* at \*16–17. Then, invoking our now-vacated *Festo* opinion, *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558 (Fed.Cir.2000) (en banc) (*Festo VII*), *vacated,* 535 U.S. 722, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002), we held that "infringement under the doctrine of equivalents with regard to the CA9100, CA9120, and CA600 models is precluded." *Id.* at \*17–18.

Having disposed of those three accused models, we further concluded that the fourth accused device, the CA9000 model, could not infringe the asserted claims. Addressing the alleged infringement of claim 1 by the CA9000 model, we determined that the proper construction of claim 1 required the "associated sensing means" to "be contained within the same housing as the receiving circuit," thus precluding any literal infringement since the antenna was in a different housing from the "receiving circuit." *Id.* at \*19–21. Relying on the same construction, we then ruled that the CA9000 model could not infringe under the doctrine of equivalents, lest the application of that doctrine com-

pletely vitiated the single housing limitation of the "associated sensing means." *Id.* at \*21–22. As to the alleged infringement of claim 6 by the CA9000 model, we determined that the accused device did not infringe, literally or by equivalents, the "enable the receiving circuit" of claim 6, because the preceding circuitry could continuously receive signals without needing to be "enabled." *Id.* at \*22–27.

Having concluded that the district court did not commit reversible error in its non-infringement determination, we turned to R.F. Tech's cross-appeal. On the merits of the cross-appeal, we determined that the district court correctly held that the claims in suit were not invalid or unenforceable, and that the trial court did not abuse its discretion in denying R.F. Tech's motion for attorneys' fees. *Id.* at \*27–35.

## II

Prosecution history estoppel stands "as a legal limitation on the doctrine of equivalents." *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 30, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Since this restriction on the doctrine of equivalents applies "only where claims have been amended for a limited set of reasons," *id.* at 32, 117 S.Ct. 1040, prosecution history estoppel does not apply to claim construction, literal infringement analysis, or when there is no relevant amendment during the prosecution of the patent application. Consequently, our constructions of the disputed claim terms and our determinations of no literal infringement do not implicate prosecution history estoppel; they are therefore unaffected by the holding of *Festo VIII* and are restored in their entirety.

## III

In *Festo VIII,* the Supreme Court vacated this court's en banc decision and estab-

lished a new framework for analyzing the interaction of the doctrine of equivalents and prosecution history estoppel. We must therefore determine whether the Court's holding affects our doctrine of equivalents analysis in this case.

### A

In *Senior Tech III*, we held that "infringement under the doctrine of equivalents with regard to the CA9100, CA9120, and CA600 models is precluded" because amendments to the asserted claims during prosecution completely barred the application of the doctrine of equivalents. *Senior Tech III*, 2001 U.S.App. LEXIS 4179, at *17–18 (citing *Festo VII*, 234 F.3d 558). In light of *Festo VIII*, our conclusion based on that reasoning is no longer valid.

Although the underlying reasoning can no longer stand, the holding may nonetheless remain valid on other grounds. As we recently explained,

> [w]e do not interpret the Supreme Court's order in this case as requiring us to address the *Festo* issue or as precluding us from deciding the case on some other ground. Because the Court vacated our prior judgment affirming the district court's order ..., the case on remand stands in the same posture as it did in the earlier appeal before our decision there. We think that all the Supreme Court intended was that, if we again considered the prosecution history estoppel point, we should do so in light of the Court's elucidation of that doctrine in its *Festo* opinion. There is no reason to believe, however, that the Supreme Court intended to require us on remand to limit our analysis to the theory we previously had followed. Indeed, our disposition of this appeal on grounds other than prosecution history estoppel literally complies with the Supreme Court's order in the sense that, "in light

of *Festo*," we have "further considered" the case and concluded that the judgment of the district court should be affirmed on another ground.

*Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1310–11 (Fed.Cir. 2003).

As in *Lockheed*, we have reconsidered the case and concluded that the judgment of the district court should be affirmed on another ground. That other ground is the patentee's implicit and necessary exclusion of a structural feature opposite from the claimed structure. *See SciMed Life Sys. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1345–47 (Fed.Cir.2001). In *SciMed*, we explained that "because the scope of the claim was limited in a way that plainly and necessarily excluded a structural feature that was the opposite of the one recited in the claim, that different structure could not be brought within the scope of patent protection through the doctrine of equivalents." *Id.* at 1346. In other words, in a binary choice situation where there are only two structural options, the patentee's claiming of one structural option implicitly and necessarily precludes the capture of the other structural option through the doctrine of equivalents. *See id.* at 1345–46 (citing and discussing *Moore, U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed.Cir.2000); *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1425 (Fed.Cir.1997); *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1561 (Fed.Cir. 1997); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 400 (Fed.Cir.1994)). To illustrate, "if a patent states that the claimed device must be 'non-metallic,' the patentee cannot assert the patent against a metallic device on the ground that a metallic device is equivalent to a non-metallic device." *SciMed*, 242 F.3d at 1347. If "metallic" were allowed to be the equiva-

lent of "non-metallic," such approach would wholly vitiate the claimed "non-metallic" limitation and negate the "clear and binding statement to the public that metallic structures are excluded from the protection of the patent." *Id.*

In this case, as in *SciMed*, the patentee's choice of claim terms has plainly, necessarily, and implicitly excluded from the scope of the patent the embodiment it now seeks to capture through the doctrine of equivalents. In *Senior Tech III*, we ruled that the "receiving circuit" corresponded to the accused devices' unit composed of the microprocessor and preceding circuitry together. *Senior Tech III*, 2001 U.S.App. LEXIS 4179, at *9–12. We further determined, as a matter of claim construction, that the "receiving circuit" had to be in a single housing. *Id.* at *12–17.[1] Hence, the microprocessor and the preceding circuitry–the components of the "receiving circuit" in the accused devices–have to be in the same housing for infringement to attach. That was not the case however. "[I]n the CA9100, CA9120, and CA600, the circuitry preceding the microprocessor was removed and placed in the antenna unit mounted near the door, while the microprocessor remained in the control unit." *Id.* at *17. Because the elements corresponding to the "receiving circuit" in those three models were not in the same housing, those three devices could not infringe literally. Nor could they infringe under the doctrine of equivalents, since the patentee's decision to claim a "receiving circuit" located in the "same housing" necessarily and implicitly excluded from the scope of equivalents an embodiment of the "receiving circuit" which is *not* located in the "same housing." Were we to allow a finding of infringement by equivalents de-

spite the two distinct and separate housings for the elements of the "receiving circuit," we would permit the vitiation and deletion of the claimed "same housing" limitation. If we upheld such a finding, we would impermissibly allow the doctrine of equivalents "such broad play as to effectively eliminate that element in its entirety." *Warner–Jenkinson*, 520 U.S. at 29, 117 S.Ct. 1040. Because such a result is repugnant to Supreme Court and Federal Circuit precedent, we again hold that the CA9100, CA9120, and CA600 models do not infringe claims 1 and 6 of the '155 patent under the doctrine of equivalents. In light of this ruling, we do not need to reach the issue of prosecution history estoppel. *See Lockheed*, 324 F.3d at 1321–22.

**B**

In *Senior Tech III*, we analyzed the alleged infringement by the CA9000 model separately from the other three models. In that analysis, we did not rely on prosecution history estoppel, and accordingly did not implicate *Festo VIII*. *See Senior Tech III*, 2001 U.S.App. LEXIS 4179, at *19–27. Instead, we reached that conclusion based on the patentee's necessary and implicit exclusion of the embodiment it sought to capture through the doctrine of equivalents. *See SciMed*, 242 F.3d at 1346–47.

Applying the well-settled rule summarized in *SciMed* to the alleged infringement of claim 1 by the CA9000 model, we explained that "an attempt to expand the scope of claim 1 under the doctrine of equivalents to encompass the accused devices, which have antennae located outside of the receiving circuit's housing, would *eviscerate* the construed limitation that

---

1. In its petition for rehearing to this court after the issuance of *Senior Tech III*, Senior

Tech did not challenge either of these rulings.

they [the antenna and the receiving circuit] be contained within the housing." *Senior Tech III,* 2001 U.S.App. LEXIS 4179, at *21 (emphasis added). In other words, a finding of infringement under the doctrine of equivalents, despite the fact that the CA9000 model's antenna was located outside of the receiving circuit's housing, would vitiate the requirement that the antenna (corresponding to the "associated sensing means") be located in the same housing as the receiving circuit. Such a finding would impermissibly delete an express limitation from the claims and abrogate the notice function of the patent claims.

The same principle also compelled a conclusion that the CA9000 model could not infringe claim 6 under the doctrine of equivalents. Properly construed, claim 6 required "total enablement," i.e. "unless the receiving circuit has been 'enabled,' it [the invention] is inoperative with respect to all of its functions–receiving signals, responding to them, or producing an output response." *Id.* at *24. Under the settled rule of *SciMed,* the patentee's decision to require "total enablement" in claim 6 necessarily and implicitly excluded the opposite of that requirement (non-enablement) from the scope of equivalents. *See SciMed,* 242 F.3d at 1346–47. Yet, the patentee essentially asserted that a structure that required no enablement actually infringed the "total enablement" limitation by equivalents. *See Senior Tech III,* 2001 U.S.App. LEXIS 4179, at *26 (explaining that "the structure in the accused products corresponding to the 'receiving circuit' in the '155 patent d[id] not have to be 'enabled,' as claim 6 require[d], in order to receive transmitted signals."). The patentee's assertion cannot prevail however, because infringement of a claim requiring "total enablement" by an accused device that did not need to be enabled would contravene both the notice function of the claims and settled Supreme Court case law. *See SciMed,* 242 F.3d at 1346–47. Consequently, the CA9000 model could not infringe claim 6 under the doctrine of equivalents.

In sum, we reaffirm our initial conclusion that the CA9000 device did not infringe either claim 1 or claim 6 under the doctrine of equivalents.

## IV

As mandated by the Supreme Court, we have reconsidered our original decision in this case in light of *Festo VIII.* Based on this reconsideration and as explained above, we again hold that none of the accused products infringe the asserted claims either literally or under the doctrine of equivalents. We therefore affirm the district court's judgment of noninfringement. Moreover, for the reasons explained in our original opinion, we also affirm the district court's ruling that the patent in suit is not invalid or unenforceable and that R.F. Tech was not entitled to attorneys' fees.